Our final case for oral argument this morning is Appeal No. 25-1521, Singh v. Bondi. One second, please. I just want to make sure before you start that we have all counsel here. Can you hear me okay, Mr. Masucci? I can, Your Honor. Thank you. Mr. Sanez, I see you're there as well. Can you hear me okay? Yes, Your Honor. Okay, thank you. You may proceed now. May it please the Court. As the Court is aware, in my brief, I essentially made two arguments for why the agency's credibility finding was erroneous and not supported by substantial evidence. One was lack of notice and opportunity to explain, and the second was just several of the indicia referred to by the agency either didn't make any sense or really weren't present in the record. I noticed in the case of Stanko, which was cited by my colleague, that this Court indicated that it has long steered clear of any kind of rigid, bright-lined formula with regard to, you know, demanding opportunities to explain on the part of IJs. However, the Court did indicate that if the immigration judge relies on minor tenuous inconsistencies to find an applicant not credible, the judge's finding is not likely based on substantial and probative evidence, regardless of whether the applicant had a chance to explain the inconsistencies. I would respectfully argue to the Court that the four indicia that the agency points to, arguably, two of them do not exist in the record. One of them is, I think, possibly, you could say it exists in the record, but I hardly think that, you know, relying on it could be considered cogent, and the other is just, frankly, just baffles me. With regard to the, let me start with the one so-called discrepancy that is mentioned, and the Court indicates, the IJ and the Board indicate that my client indicated that he was treated by nurses at this facility after that attack. Review of the record does not show him indicating at all that he was treated by nurses. His attorney asked him the name of the doctor, and he said in a fragment, there were nurses, yeah, one, and the attorney then, actually, his attorney then tried to actually clarify, he said, you know, well, what's the name of the doctor? And that was very quickly quashed by the government asking, the government raising an objection that it was asked and answered, and the IJ sustaining it. Similarly, the question of whether he spent two weeks convalescing in the hospital, or two days in the hospital, or some shorter period in the hospital, and then two weeks convalescing at home, arguably, that can said to exist, that discrepancy can be said to exist in the record, but I am frankly not sure why it would matter. I don't see that really being material to his claim. He wasn't describing time in the hospital with dramatic, you know, interventions happening versus just bed rest. I mean, it's bed rest for two weeks. I don't really understand why that was such a concern to the agency. Regarding his omitting any mention of visits by the Congress party to his family, I really don't see the relevance. First of all, he was not asked about this during his hearing, either on direct or on cross. There was some questioning about whether his family was facing any problems in India, and he made very clear that no, they're not. He was essentially saying they're not similarly situated to me. He had a fear of going back to India, but his family's being visited or not being visited by the Congress didn't really seem to be relevant at all. Mr. Masucci, thank you. I hear your argument about opportunity to explain. Can you square that with why your client didn't file a brief? I know it wasn't the IJ, but why your client didn't file a brief with the BIA after the joint motion to remand was granted? I have no explanation. I have no knowledge of why that didn't happen. When I accepted this case, I was immediately struck by that. I would, however, Your Honor, respectfully argue that the issues that are before us now were raised in the first round in the administrative appeal brief after the individual hearing. And it could have, yeah, I think a brief on remand, I'm sorry, a brief after remand from this court would have probably made everyone's life easier, but it didn't happen. But again, I don't think the failure to file that brief would constitute failure to exhaust or waiver of arguments. I think the arguments certainly around opportunity to, you know, confrontation and opportunity to explain, those were raised in the initial appeal brief to the board. So I used, I used the term in my brief, which I don't like to use because I think it's kind of on the edge of sanctionable, perhaps, but the word is gotcha. And the sense, just the visceral sense that I had from reading through this, the transcript of the individual hearing, it felt like there was no real interest on the part of the IJ to develop the record at all, even around some of these very ambiguous and not terribly clear things that the judge seemed to be concerned about. And you probably also noticed in an individual hearing, the government, the government didn't raise any of the issues regarding credibility, really, that were the, really the basis of the IJ's decision. So in short, if I may, I would respectfully argue that the government's, I'm sorry, the agency's adverse credibility finding is not supported, overall not supported by substantial evidence, and therefore also any problems regarding corroboration or burden of proof, insofar as those, those issues relied on the, the adverse credibility findings, I think are also not, not relevant, relevant at this point. Thank you, Mr. Masucci. Right. Mr. is it Sands?   Good morning. Good morning, your honors. May it please the court, with all full signs for the U.S. Attorney General, this court should deny the petition for review because substantial evidence supports the agency's determination, the only determination before this court, that under the totality of the and Mr. Singh's narrow arguments to the contrary, don't compel a different conclusion. I'd like to start by pointing to the inconsistency that the immigration judge called a major inconsistency, which was the length of the hospitalization in April of 2013. This was one of two of Mr. Singh's main events that led to him to flee India, and the only incident where he was hospitalized. Um, the record reflects three different accounts for what was said about where and for how long he stayed. In his testimony at 253 and 54, he stated that he stayed in the hospital for two weeks. The doctor's note at 374 said he was dressing after two days in the hospital. And the declaration 384, 383 to 284 said that he was in bed at home for two weeks, receiving treatment from the doctors. This is a very similar situation to a prior decision, the Rama decision, in which this court affirmed reliance on differing accounts as to the length of hospitalization. There, there were two individuals that were hospitalized for different times, and the three for one and 12 and 10 for another. We have a much broader range of time here in that we have two days or less compared to two weeks. And I'd also like to draw this court's attention to the Singh versus Garland case. I want to make sure that we're referencing the right case as there is a couple cited in our brief, and the case name in this case is actually quite similar. So that's an 858 F Appendix 450 to 2021 decision. And there, this court affirmed a very similar situation where there was an inconsistency regarding where the treatment was had. Those three different accounts was pointed to by the agency here in their decisions, and the materiality speaks for itself. In terms of my colleague's argument that it, explanations for why this isn't a discrepancy that wasn't raised in the opening brief, the only argument that was raised in the opening brief as to that discrepancy was whether or not there was an opportunity to explain. And as my learned colleague explained in Sanko, this court rejected the exact same argument about having an opportunity to explain. It grappled with the Second Circuit's decisions which allow for an opportunity to explain with minor inconsistencies. And as my colleague pointed out, this court ultimately decided that it was irrelevant to the analysis because what matters is specific and cogent reasons supporting the decision. And as such, whether or not a person is given an opportunity to explain where there is a minor inconsistency, it doesn't necessarily impact that analysis already because it wouldn't be a material inconsistency. Turning to the point about the nurses, admittedly, the testimony that my colleague alluded to is a little bit unclear and had a little bit of wanting in terms of more information. But the agency here concluded that based on that sentence, who took care of you? Answer, there were nurses. Yeah, one pointed to the idea that there were nurses administering treatment, which is a different account than what is presented in the declaration and the doctor's note, which only alluded to a doctor, albeit in different places. But even so, under this court's precedent and tar off and die, this court has already acknowledged that it's not going to overturn an adverse credibility determination simply because there are differing potential views of the evidence. And that's exactly what we have here. It could be interpreted that that response was alluding to a doctor. It could not as well. The agency chose one of those avenues. And as such, it's a very similar situation to a different Singh decision, Singh versus Wilkinson, where there was an inconsistency about treatment at the hospital by a doctor versus a local hakim. In other words, that there is a difference here in terms of who is administering the care, the quality of care, and the requirements that need to be done. I think that's what this court in Singh was getting at. In terms of the omission about the subsequent visitation to the parents and inquiries about his whereabouts, the declaration of 385-86 says that he expressed some concern about the well-being of his parents because his parents had been visited by Congress party members, asked about his whereabouts. And as such, his parents told him that he should not return back to India because his life is still in danger. That conflicts with the testimony, which he was asked if his parents are okay. He said yes. And then to clarify, he was asked, why do you think he would still have problems in  And he responded with only because they're old and because they mostly stay at home. Throughout testimony, three separate times, at 236, 238-39, and 271, he was asked repeatedly, why did he continue to fear to go back to India? And at none of those junctures was this situation about his parents being visited acknowledged or given. And this court has affirmed in very similar situations in the Cornijo case and the Dai case, where there was a much stronger position in an initial testimonial document that was later omitted from later live testimony. In Cornijo, it was a kidnapping. In Dai, it was details about encounters with the police. And I think the reason is best explained in the first Singh decision that I referenced earlier, 858-F Appendix 450, where there, this court affirmed reliance on an omission about a subsequent visit to parents. And there, the court reasoned that a credible petitioner would, quote, reasonably have been expected to disclose such facts when pursuing a claim that he feared returning to India. The same reasoning applies here. We have Indisha of the alleged persecutors coming, asking about his whereabouts. He was in fear that he should not even return. His parents were telling him not to return. This is something that a credible petitioner would have relied on because it greatly impacts the strength of the claim. And I'm just going to check my notes. In terms of what happened on remand, my colleague alludes in the opening brief to the idea that this, the agency didn't address what the reasons for which, or the issues that were given for and I would just point out that the remand motion was worded widely to give the court, give the agency discretion and said it could consider whatever issues it deemed relevant on remand. And the court's order granting the remand motion also said that it was remanding for further proceedings before the court. It didn't otherwise limit the issues on remand, so the agency was free to consider the adverse credibility determination in addition to the corroboration determination. If there are no further questions, I'll cede the remainder of my time to my learned colleague. Thank you, Mr. Sins. Mr. Masucci. Yes, Your Honor. Thank you. Just a couple of things. Regarding the rank of the medical providers, my colleague, I think, inadvertently misstated the question. I'm looking at the exchange on page 253 of the record. The question is very specific. Do you remember the name of the doctor that took care of you, sir? He wasn't asked who provided the care. Do you remember the name of the doctor? Then there were nurses. Yeah, one, again, is a fragmentary kind of non-answer that, again, the attorney tried to get some clarity on. And again, that didn't go anywhere. This would be objective and that was sustained. Finally, I'll just note, again, referring to the Sanko decision, this court said very distinctly, we are not required, but we have not required a remand when an immigration judge fails to provide such an opportunity. That is an opportunity to address non-obvious minor discrepancies. And we decline to do so here. So the court is very clear. There's no automatic, at least up until now, that there's been no automatic requirement for remand. However, I would, again, respectfully argue that if there are minor or tenuous inconsistencies that are not clarified by confrontation and explanation, then arguably they cannot qualify as substantial and probative evidence. So in any event, if there are no other questions, I can see I'm over my time. Thank you. Thanks to both counsel in the case. The court will take the case under advisement. And that concludes oral arguments for this morning.